UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| DAVID ZIMPFER, | § § § | |
| Plaintiff, | § § | |
| v. | § § | Case # 1:18-cv-1512-DB |
| COMMISSIONER OF SOCIAL SECURITY, | § § | MEMORANDUM DECISION AND ORDER |
| Defendant. | § § | |

# INTRODUCTION

Plaintiff David Zimpfer ("Plaintiff") brings this action pursuant to the Social Security Act (the "Act"), seeking review of the final decision of the Commissioner of Social Security (the "Commissioner") denying his application for Disability Insurance Benefits ("DIB") under Title II of the Act. *See* ECF No. 1. The Court has jurisdiction over this action under 42 U.S.C. §§ 405(g), 1383(c), and the parties consented to proceed before the undersigned, in accordance with a standing order (*see* ECF No. 15).

Both parties moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). *See* ECF Nos. 9, 14. Plaintiff also filed a reply, and the Commissioner filed a sur-reply. *See* ECF Nos. 17, 20. For the reasons set forth below, Plaintiff's motion (ECF No. 9) is **DENIED**, and the Commissioner's motion (ECF No. 14) is **GRANTED**.

# BACKGROUND

On April 30, 2015, Plaintiff filed his DIB application, alleging a disability beginning on April 20, 2014 (the "disability onset date"). Transcript ("Tr.") 115, 251–57. Plaintiff alleged disability due to: diabetes, impairments in his left arm and shoulder, depression, and anxiety. Tr. 251, 271. Plaintiff's claim was initially denied on August 17, 2015, after which he requested an administrative hearing. Administrative Law Judge Brian Battles (the "ALJ") held a video hearing

from Alexandria, Virginia, on September 15, 2017. Tr. 115. Plaintiff appeared and testified from Buffalo, New York, and was represented by Amanda Jordan-Pugh, an attorney. Tr. 115, 132. Stephanie R Archer, an impartial vocational expert ("VE"), also appeared and testified at the hearing. *Id*.

The ALJ issued an unfavorable decision on November 27, 2017, finding that Plaintiff was not disabled. Tr. 112–31. On October 30, 2018, the Appeals Council denied Plaintiff's request for further review. Tr. 1-7. The ALJ's decision thus became the "final decision" of the Commissioner subject to judicial review under 42 U.S.C. § 405(g).

## LEGAL STANDARD

### I. District Court Review

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (citing 42 U.S.C. § 405(g)) (other citation omitted). The Act holds that the Commissioner's decision is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (citations omitted). It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F. 3d 496, 501 (2d Cir. 1990).

### II. The Sequential Evaluation Process

An ALJ must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Parker v. City of New York*, 476 U.S. 467, 470-71 (1986). At step one, the ALJ must determine whether the claimant is engaged in substantial gainful

work activity. *See* 20 C.F.R. § 404.1520(b). If so, the claimant is not disabled. If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, meaning that it imposes significant restrictions on the claimant's ability to perform basic work activities. *Id*. § 404.1520(c). If the claimant does not have a severe impairment or combination of impairments meeting the durational requirements, the analysis concludes with a finding of "not disabled." If the claimant does, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). *Id*. § 404.1520(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement, the claimant is disabled. *Id*. § 404.1509. If not, the ALJ determines the claimant's residual functional capacity, which is the ability to perform physical or mental work activities on a sustained basis notwithstanding limitations for the collective impairments. *See id*. § 404.1520(e)-(f).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits him or her to perform the requirements of his or her past relevant work. 20 C.F.R. § 404.1520(f). If the claimant can perform such requirements, then he or she is not disabled. *Id*. If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. *Id*. § 404.1520(g). To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of his or her age, education, and work experience. *See Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks omitted); *see also* 20 C.F.R. § 404.1560(c).

# ADMINISTRATIVE LAW JUDGE'S FINDINGS

The ALJ analyzed Plaintiff's claim for benefits under the process described above and made the following findings in his November 27, 2017 decision:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2019;

2. The claimant has not engaged in substantial gainful activity since April 21, 2014, the alleged onset date (20 CFR 404.1571 *et seq.*);

3. The claimant has the following severe impairments: Diabetes Mellitus; Carpal Tunnel Syndrome; Degenerative Joint Disease and AC Joint Arthritis of the Left Shoulder; Sleep Apnea; Depression; and Anxiety (20 CFR 404.1520(c));

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526);

5. The claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b)[1] except that the claimant: can occasionally balance, stoop, kneel, crouch, and crawl; occasionally climb ramps or stairs; cannot climb ladders, ropes, or scaffolds; can frequently but not constantly use their left dominant upper extremity for reaching, handling, and fingering activities; can perform work in a low stress job defined as having no fixed production quotas, only occasional decision making, and only occasional changes in the work setting; can have no more than occasional contact with supervisors, coworkers, and the general public with respect to performing work related duties;

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565));

7. The claimant was born on November 20, 1964 and was 49 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date. The claimant subsequently changed age category to closely approaching advanced age (20 CFR 404.1563);

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564);

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not

---

[1] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, [the claimant] must have the ability to do substantially all of these activities. If someone can do light work, [the SSA] determine[s] that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. § 404.1567(b).

4

disabled," whether or not the claimant has transferable job skills (*See* SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2);

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569(a));

11. The claimant has not been under a disability, as defined in the Social Security Act, from April 21, 2014, through the date of this decision (20 CFR 404.1520(g)).

Tr. 115-127.

Accordingly, the ALJ determined that, for a period of disability and disability insurance benefits fled on April 30, 2015, the claimant was not disabled under sections 216(i) and 223(d) of the Social Security Act. Tr. 127.

## **ANALYSIS**

Plaintiff asserts a number of challenges to the ALJ's findings, essentially arguing his findings were not supported by substantial evidence. *See* ECF No. 9-1 at 22-29. Plaintiff challenges the ALJ's assessment of the medical opinion evidence and other evidence, as well as his RFC finding. *See id*. After the ALJ's decision, Plaintiff submitted additional evidence to the Appeals Council. Tr. 2, 76–111. Plaintiff contends that the Appeals Council should have remanded the case for the ALJ to consider that additional evidence because there is a reasonable "possibility" it would have changed the ALJ's RFC finding. *See* ECF No. 9-1 at 29.

A Commissioner's determination that a claimant is not disabled will be set aside when the factual findings are not supported by "substantial evidence." 42 U.S.C. § 405(g); *see also Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir.2000). Substantial evidence has been interpreted to mean "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. The Court may also set aside the Commissioner's decision when it is based upon legal error. *Rosa*, 168 F.3d at 77.

5

Plaintiff submitted the following additional evidence to the Appeals Council:

1. Horizon Corporations treatment and evaluation records, dated February 21, 2017 (Tr. 39-43);

2. Southgate Medical Group ("Southgate") treatment records, dated September 22, 2017 to November 3, 2017 (Tr. 49-58); and

3. New York State ACCESS-VR vocational services records, dated April 1, 2016 to August 4, 2017 (Tr. 83-111).

The Appeals Council determined this additional evidence did not show a reasonable probability that it would change the outcome of the decision, and thus, did not consider and exhibit the additional evidence. Tr. 2.

Plaintiff also submitted:

1. Functional Capacity Evaluation from occupational therapist Joseph J. Higgins ("Mr. Higgins"), dated March 13, 2018 (the "Higgins Report") (Tr. 65-73);

2. Horizon Corporations treatment and evaluation records, dated March 29, 2018 to May 9, 2018 (Tr. 27-38);

3. Southgate Medical Group treatment records, dated January 3, 2018 to April 3, 2018 (Tr. 59-64);

4. New York State ACCESS-VR vocational services records, dated December 28, 2017 to June 1, 2018 (Tr. 76-82).

Because Plaintiff's case was decided through November 27, 2017, the Appeals Council determined that the above-referenced evidence did not relate to the period at issue and therefore, did not affect the decision about whether Plaintiff was disabled beginning on or before November 27, 2017. Tr. 2. As the Appeals Council explained, Plaintiff would need to apply again to determine whether he was disabled after November 27, 2017. *Id.*

As an initial matter, the Court finds the new evidence submitted to the Appeals Council after the ALJ's decision is part of the administrative record for judicial review when the Appeals Council denies review of the ALJ's decision. *Perez v. Chater*, 77 F.3d 41, 45 (2d Cir. 1996). The

regulations expressly authorize claimants to submit new and material evidence to the Appeals Council without a "good cause" requirement, as long as it relates to the period on or before the ALJ's decision. *Id.* (citing § 404.970(b) and § 416.1470(b)). Evidence is "new" when it has not been considered previously in the administrative process. *See Ovitt v. Colvin*, 2014 WL 1806995, *3 (N.D.N.Y. May 7, 2014). New evidence is "material" where it is both relevant to the plaintiff's condition during the relevant time period, and probative. *Pollard v. Halter*, 377 F.3d 183, 193 (2d Cir. 2004). "The concept of materiality requires, in addition, a reasonable possibility that the new evidence would have influenced the [Commissioner] to decide claimant's application differently." *Id.*

When the Appeals Council denies review, however, it is the ALJ's decision that becomes the final decision of the Commissioner subject to judicial review, and the new evidence submitted to the Appeals Council becomes part of the administrative record on appeal. *See* 20 C.F.R. § 416.1481; *Perez*, 77 F.3d at 45. Accordingly, when reviewing the ALJ's decision, the court "review[s] the entire administrative record, which includes the new evidence, and . . . determine[s], as in every case, whether there is substantial evidence to support the decision of the [Commissioner]." *Perez*, 77 F.3d at 46; *see also Singleton v. Comm'r of Soc. Sec.*, No. 18-CV-290S, 2019 WL 4783849, at *3 (W.D.N.Y. Oct. 1, 2019).

Concerning the additional evidence after the period at issue, the Court agrees with the Appeals Council's reasoning. Plaintiff relies primarily on the Higgins Report and the other vocational service records to support his argument that this case should be remanded for the ALJ to consider the additional evidence. However, the Higgins Report did not describe Plaintiff's condition prior to the time of the hearing, and thus does not contradict the ALJ's decision. *See Perez*, 77 F.3d at 47. Although, based on the medical evidence submitted after the hearing, there

may have arguably been a decline in Plaintiff's left-hand functioning, this evidence describes a left-handed weakness noted two months after the decision. Prior to that time there were no notations of such by the same provider.

The Higgins Report, dated March 13, 2018, was issued three and one-half months after the ALJ's decision and specifically notes that Plaintiff was being evaluated "for his *current* functional capacity level for work." Tr. 65 (emphasis added). Based on Plaintiff's performance on the functional capacity test, Mr. Higgins assessed that Plaintiff's work level was limited to sedentary work 2-3 hours a day. Tr. 66. As to his fingering and manipulation, Plaintiff was limited to only occasional motions involving reaching, fine dexterity, grasping and repetitive motion. *Id*. Occasional was noted as 1-3 hours. *Id*. The ALJ in his RFC found that the Plaintiff could frequently use his left hand for fingering, reaching and handling. Tr. 120. The RFC determined by the ALJ significantly departs from Higgin's assessment in that the ALJ finds that Plaintiff can do light work with restrictions—primarily pertinent here—involving frequent use of Plaintiff's left-dominant extremity for reaching, handling and fingering activities. Tr. 120.

After testifying that an individual with Plaintiff's limitations could not perform his past relevant work, the VE testified that there are other jobs at the light level an individual with Plaintiff's limitations could perform, such as "cleaner," "sales attendant," "cashier," and "marking clerk." Tr. 171-72. Then, the VE testified that if Plaintiff was limited to only occasional use of his left-dominant extremity for reaching, handling and fingering activities, he would be precluded from the aforementioned jobs. Tr. 175. In fact, the VE testified that there were no jobs that Plaintiff could perform in the national economy where he would be limited to only occasional use of his dominant extremity. *Id*. In light of the VE's testimony, the primary question with respect to the

additional evidence submitted to the Appeals Council is whether the case should be remanded for the ALJ to consider the Higgins Report.

There is little doubt that Plaintiff experienced some numbness and pain in his left hand at least from 2015. The ALJ acknowledged that Plaintiff complained of numbness, pain and loss of grip strength, but in the ALJ's opinion, the testimony was inconsistent as to the extent alleged by Plaintiff. Tr. 121. The ALJ also noted that Plaintiff had mild to moderate polyneuropathy due to diabetes and carpal tunnel syndrome. Tr. 123. The ALJ further noted that Plaintiff's records showed little to no loss of strength in his shoulders as well as upper and lower extremities. *Id*. However, the ALJ also acknowledged that medical evidence supported limitations in the use of Plaintiff's hands due to neuropathy and carpal tunnel syndrome. Consultative examiner Hongbiao Liu, M.D. ("Dr. Liu"), who examined Plaintiff in July 2015, also noted that his left upper extremity was weaker than the right, but strength in both was 5/5. Tr. 416–19.

Records submitted after the hearing from Southgate note that Plaintiff denied weakness but admits to continuing numbness and tingling to his left upper extremity. Tr. 56. The objective examination notes that he walks with a normal gait, upper and lower extremities normal and symmetric with full range of motion ("ROM") bilaterally. His deep tendon reflexes ("DTRs") are 2+ bilaterally. Tr. 49-51, 57. Again in January 2018, he denies weakness but admits to continued numbness and tingling of left upper extremity. Tr. 59. For the first time in Southgate's records, there is a notation that Plaintiff's left hand and wrist display general weakness. *Id*. However, this is several months after Plaintiff's administrative hearing. Records in April 2018 also note that Plaintiff subjectively denies weakness, but objectively, his left hand and wrist displayed general weakness but full ROM bilaterally. Tr. 63. In March 2018, Plaintiff stated that he feels he is unable to work because of difficulties getting along with others. Tr. 20. He also stated he is intolerant of

9

others because of his chronic pain from peripheral neuropathy. *Id*. In April 2018, he reported to his provider that he has difficulty working because of concentration issues. Tr. 30. Records from the State Education Department in January 2018 indicate that Plaintiff was no longer interested in vocational rehabilitation services. Tr. 77. Notes reflect that Plaintiff "can't work now" because his social security disability case is pending. Tr. 79.

As noted above, the Appeals Council determined in its denial of benefits that the Higgins Report did not relate to the period in issue. The Court agrees. Giving Plaintiff the benefit of the doubt, there appears to have been a decline in his condition based on the medical records; however, as noted above, such did not occur until after the ALJ's decision. Further, as discussed below, even the post-hearing medical records submitted indicate no restrictions on Plaintiff.

With respect to the additional evidence the Appeals Council rejected because it did not show a reasonable probability that it would change the outcome of the decision, the Court finds that substantial evidence supports the ALJ's decision despite this additional evidence. Consistent with the regulations and case law, the ALJ considered the entire evidentiary record when formulating Plaintiff's RFC. *See Davis v. Colvin*, No. 15-CV-6695P, 2017 WL 745866, at *11 (W.D.N.Y. Feb. 27, 2017). And although the ALJ's RFC finding did not coincide perfectly with a medical opinion, the ALJ's RFC finding does not need to track any one medical opinion. *See Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013) (summary order); *Wilson v. Colvin*, No. 6:16-CV-06509-MAT, 2017 WL 2821560, at *5 (W.D.N.Y. June 30, 2017). In this case, there was substantial evidence in the record to support the ALJ.s ultimate conclusion.

In November 2016, Plaintiff told his mental health provider that he had the goal of remodeling his home by Christmas 2017. Tr. 586. Earlier, he told his provider about all the progress he had made on his house. Tr. 562. In August 2016, he reported that he was submitting

his application for a job at an auto parts store. Tr. 560. He noted that he discontinued his classes at Buffalo State due in part to difficulty with focus and concentration. *Id*. In July 2016, he reported that he is productive at home. Tr. 555. In April 2016, he reported that he was going for a job interview at an injection molding factory. Tr. 549. He also stated that he has "some skills but doesn't want to jeopardize [his] benefits from [the] state." *Id*.

As late as the summer of 2017, he reported that he cooks for himself and works out in the yard. Tr. 631. Several months earlier he reported that he had been helping neighbors with lawn and yard projects. Tr. 592. At the administrative hearing, Plaintiff testified that he could drive. Tr. 144. He testified that he had difficulty working with a mouse on the computer. Tr 145. Yet, he also testified that he completed the CAD class which necessitated computer work. Tr. 146. He testified that he could reach overhead if the object was not too heavy. Tr. 155. He testified that he did his own grocery shopping, but he didn't like crowds. Tr. 159.

As early as May 2015, Plaintiff complained of weakness and numbness in his left hand. Tr. 428. The doctor assessed carpal tunnel syndrome, but the objective findings note motor strength 5/5 bilaterally and symmetrically in both upper and lower extremities. Tr. 429. Normal tone is noted in all extremities. *Id*. Pinprick sensation is normal bilaterally and symmetrically in both upper and lower extremities as well as vibratory sensation. *Id*. Such complaints and findings were considered by the ALJ in arriving at his decision. The records also reflect that Plaintiff's left hand consistently had normal tone, no instability, no deformities and full range of motion. Tr. 407, 409, 509, 514.

Plaintiff cites to the new records submitted after the hearing from the state vocational rehabilitation counselor as evidence that fingering was far more limited than that determined by the ALJ. Correspondence from the state in January 2018 noted that his file was being closed

because he was no longer interested in pursuing vocational rehabilitation services. Tr. 77, 80. As noted in a phone call from the counselor Plaintiff stated his "[social security disability benefits] pending[,] can't work now." Tr. 79. It appears from the records that prior to the January 2018 closure of his vocational services file, there were several attempts to contact him regarding his interest in rehabilitation with no response. Tr. 81, 83. His case was opened in April 2016. Tr. 111. The rationale for vocational services notes documentation and/or observation that Plaintiff has problems for exertion, initiative and hand functioning. Tr. 108. The same assessment notes neuropathy in both feet, yet this is largely unsubstantiated by the medical records. *Id*. In July 2016, he withdrew from training at Buffalo State because of carpal tunnel surgery but indicated he was still interested in BOCES training. Tr. 95. In November 2016, his program counselor noted that his doctor had restricted him to one hour of standing. Tr. 93. The record indicates that his BOCES training plan goal was to be a drafter. Tr. 89. However, Plaintiff felt the BOCES class was "too advanced for him," and he wanted to take a more basic class in computer training. Tr. 85. After February 2017, Plaintiff appears to have dropped out of the program, and it is not until January 2018 that he indicates he is no longer interested. Tr. 81, 83. Ironically, Plaintiff was taking classes in fields that would require fine manipulation skills. In Horizon notes from March 2018, Plaintiff states that it is difficult for him to work because of "concentration issues," but there is no mention of his upper extremity problem or his ability to perform fine motor skills. Tr. 30.

The Court has reviewed all the newly submitted evidence within the relevant period. After a thorough review, the Court finds it did not "add so much as to make the ALJ's decision contrary to the weight of the evidence." *Rutkowski v. Astrue*, 368 F. App'x. 226, 229 (2d Cir. 2010); *see also Bushey v. Colvin*, 552 F. App'x. 97, 98 (2d Cir. 2014) (new evidence submitted to Appeals Council "did not alter the weight of evidence so dramatically as to require the Appeals Council to

take the case"). Plaintiff cites no persuasive evidence from the relevant review period that he had any greater limitations than the ALJ found. Thus, the Court finds that the ALJ's decision remains supported by substantial evidence.

As to Plaintiff's complaints about the ALJ's treatment of his testimony, the Court finds that in accordance with the regulations, the ALJ discussed Plaintiff's symptoms, his medical treatment, and his activities of daily living. *See Trifiletti v. Comm'r of Soc. Sec.*, No. 114CV1427GTSWBC, 2016 WL 536623, at *9 (N.D.N.Y. Jan. 22, 2016), *report and recommendation adopted*, No. 114CV1427GTSWBC, 2016 WL 552953 (N.D.N.Y. Feb. 10, 2016). The ALJ cited Plaintiff's alleged lack of functionality as only one of several inconsistencies in the record. Tr. 121. The ALJ specifically noted that the evidence showed Plaintiff capable of performing fine motor and gross motor activity effectively while acknowledging that he had some limitation due to shoulder problems, carpal tunnel syndrome, and diabetic neuropathy. Tr. 118. For example, although Plaintiff stated he could not "do fine motor things," he also testified to performing various daily activities that required at least some ability to finely manipulate objects, including completing a CAD programming class. Tr. 145.

The ALJ also emphasized that the objective evidence did not support Plaintiff's allegations of being bedridden on some days, having panic attacks, or having impaired concentration. Tr. 121. Those inconsistencies combined with the ALJ's other reasons for discrediting Plaintiff's subjective allegations constitute substantial evidence to support his finding. The ALJ thoroughly discussed Plaintiff's testimony and the medical evidence in arriving at his conclusion that Plaintiff's subjective statements concerning the intensity, persistence and limiting effects of his alleged impairments were not entirely consistent with the medical evidence and other evidence in the record. Tr. 121. This was in no way a boilerplate assertion by the ALJ.

As to Plaintiff's complaints about the ALJ's assessment of Nurse Practitioner James Urgo, FNP ("NP Urgo"), the ALJ gave his reasons for the weight he assigned. Tr. 123. First, under the regulations in effect at the time of Plaintiff's application, "acceptable medical sources" were licensed physicians (medical or osteopathic doctors), licensed or certified psychologists, licensed optometrists, licensed podiatrists, and qualified speech-language pathologists. *See* 20 C.F.R. § 404.1513(a); SSR 06-03p.[2] "Other sources" included nurse practitioners, licensed clinical social workers, physician assistants, school teachers, counselors, relatives, and employers. See 20 C.F.R. § 404.1513(d); SSR 06-03p. Opinions from other sources "do not demand the same deference as those of a treating physician." *Genier v. Astrue*, 298 F. App'x 105, 108 (2d Cir. 2008).

Since nurse practitioners are not listed as "acceptable medical sources," they cannot be "treating sources," and cannot even give "medical opinions." ALJs only have to evaluate and weigh "medical opinions." 20 C.F.R. § 416.927(c) ("Regardless of its source, we will evaluate every medical opinion we receive."); *see also Taylor v. Colvin*, No. 3:14-CV-0928 (GTS), 2016 WL 1049000, at *5 (N.D.N.Y. Mar. 11, 2016) ("[A]n opinion from a nurse practitioner is not a medical opinion that is entitled to any particular weight under the regulations."); *Millard v. Comm'r of Soc. Sec.*, No. 5:13-CV-00261, 2014 WL 6485807, at *6 (D. Vt. Nov. 19, 2014) (same); *Gallup v. Comm'r of Soc. Sec.*, No. 6:11-CV-1345 NAM, 2014 WL 2480175, at *6 (N.D.N.Y. June 3, 2014) ("[A]s a nurse practitioner, she was not an 'accepted medical source' . . . .").

An ALJ evaluates an opinion from an "other source" using the following factors: (1) length of the treatment relationship and frequency of examinations; (2) nature and extent of the treatment

---

[2] On January 18, 2017, the agency published final rules titled "Revisions to Rules Regarding the Evaluation of Medical Evidence." 82 Fed. Reg. 5844; see also 82 Fed. Reg. 15132 (March 27, 2017) (amending and correcting the final rules published at 82 Fed. Reg. 5844). These final rules are effective for claims filed as of March 27, 2017; therefore, they do not apply to the ALJ's decision in this case.

relationship; (3) the supportability by medical signs and laboratory findings; (4) the consistency of the opinion with the record as a whole; and (5) the doctor's specialization. 20 C.F.R. §§ 404.1527(c)(2)-(5). When an opinion is unsupported or is inconsistent with other substantial evidence, the ALJ is not required to afford deference to that opinion and may use discretion in weighing the medical evidence as a whole. *See Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004). In this case, the ALJ properly gave only little weight to NP Urgo's opinion because it was inconsistent with the evidence as a whole. Tr. 123. For example, the ALJ noted that NP Urgo's opinion regarding Plaintiff's physical limitations was inconsistent with and unsupported by the medical evidence of record. Tr. 123 The ALJ cited seven specific treatment notes that supported his conclusion. *Id*. The ALJ properly considered and gave his reasons for declining to follow the restrictions outlined by NP Urgo. He need to have done nothing more.

## CONCLUSION

Plaintiff's Motion for Judgment on the Pleadings (ECF No. 9) is) is **DENIED**, and the Commissioner's Motion for Judgment on the Pleadings (ECF No. 14) is **GRANTED**. The Clerk of Court is directed to enter judgment and close this case.

**IT IS SO ORDERED**.

DON D. BUSH
UNITED STATES MAGISTRATE JUDGE

15